1  Michael E. Gates, City Attorney (SBN ….)
   Michael.Gates@surfcity-hb.org
2  Michael Vigliotta (SBN ….)
   MVigliotta@surfcity-hb.org
3  OFFICE OF THE CITY ATTORNEY
   CITY OF HUNTINGTON BEACH
4  2000 Main St., Fourth Floor
   Huntington Beach, CA 92648
5  Tel: 714.536.5538      Fax: 714.374.1590

6  Mark J. Austin (SBN 208880)
   maustin@bwslaw.com
7  Stephen A. McEwen (SBN 186512)
   smcewen@bwslaw.com
8  BURKE, WILLIAMS & SORENSEN, LLP
   1851 East First Street, Suite 1550
9  Santa Ana, CA 92705-4067
   Tel: 949.863.3363      Fax: 949.863.3350
10
   Attorneys for Defendant
11 CITY OF HUNTINGTON BEACH

12
                    UNITED STATES DISTRICT COURT
13
                  CENTRAL DISTRICT OF CALIFORNIA
14

15
   SHAYNA LATHUS, an individual,        Case No. 8:21-cv-00808-SB-DFMx
16
                   Plaintiff,            **DEFENDANT CITY OF
17                                       HUNTINGTON BEACH'S NOTICE
         v.                              OF MOTION AND MOTION TO
18                                       DISMISS COMPLAINT PURSUANT
   CITY OF HUNTINGTON BEACH, a           TO FRCP 12(b)(6)**
19 municipal entity, and DOES 1-20,
   inclusive,                            **[FRCP 12(b)(6)]**
20
                   Defendants.           **Hearing:**
21                                       Date:  September 3, 2021
                                         Time:  8:30 a.m.
22                                       Judge: Hon. Stanley Blumenfeld, Jr.
                                                Courtroom 6C
23

24

25

26

27

28

Burke, Williams & Sorensen, LLP
Attorneys At Law
Santa Ana

IRV #4833-0711-1668 v1        - 1 -        DEFENDANT CITY OF HUNTINGTON
                                           BEACH'S NOTICE OF MOTION AND
                                           MOTION TO DISMISS COMPLAINT

**TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on September 3, 2021, at 8:30 a.m., or as soon thereafter as this matter may be heard in Courtroom 6C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, Defendant City of Huntington Beach ("City") will, and hereby does, move this Court for an order dismissing Plaintiffs' First and Second Claims for Relief in the "Civil Rights Complaint" filed in this matter May 28, 2021 ("Complaint").

This Motion will be made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that the First and Second Claims for Relief fail to state any claim upon which relief can be granted as a matter of law.

This Motion will be based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all records presently on file with this Court, all other matters of which this Court shall or may take judicial notice, any further briefing or evidence on this Motion, and such other additional evidence and argument as may be presented to the Court before or during the hearing on this Motion.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on July 23, 2021.

Dated: July 30, 2021

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Mark J. Austin
Mark J. Austin
Stephen A. McEwen
Attorneys for Defendant
CITY OF HUNTINGTON BEACH

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... II

I.   INTRODUCTION ................................................................................ 1

II.  STATEMENT OF FACTS .................................................................... 3

III. STANDARD OF REVIEW .................................................................. 5

IV.  ARGUMENT ........................................................................................ 5

   A. Each of Plaintiff's Claims is Premised on Actual or Threatened Retaliation, in the Form of Removal from the Advisory Board, for Engaging or Failing to Engage in Certain Speech .......................... 5

   B. Plaintiff Cannot State a First Amendment Claim Based on Her Actual or Threatened Removal from the Political "Advisory Board" By the Very Politician Who Put Her There ............................ 6

V.   CONCLUSION ................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 5

*Blair v. Bethel School Dist.*,
   608 F.3d 540 (9th Cir. 2010) ............................................................................ *passim*

*Bruce v. Ylst*,
   351 F.3d 1283 (9th Cir. 2003) ................................................................................ 7

*CarePartners, LLC v. Lashway*,
   545 F.3d 867 (9th Cir. 2008) .................................................................................. 7

*Chinn v. City of Spokane*,
   429 Fed.Appx. 673 (9th Cir. 2011) ................................................................. *passim*

*Laird v. Tatum*,
   408 U.S. 1 (1972) .................................................................................................... 6

*Mendocino Envtl. Ctr. v. Mendocino County*
   (9th Cir. 1999), 192 F.3d 1283 ............................................................................... 7

*Pickering v. Bd. of Educ. of Township High Sch. Dist.*,
   391 U.S. 563 (1968) ................................................................................................ 6

*Soranno's Gasco, Inc. v. Morgan*
   (9th Cir. 1989) 874 F.2d 1310 ................................................................................ 6

*Thomas v. Independence Twp.*
   (3d Cir. 2006) 463 F.3d 285 ................................................................................... 6

**Federal Statutes**

42 U.S.C. section 1983 ................................................................................................... 5

**State Statutes**

Cal. Gov. Code sections 54950 *et seq* ................................................................. 3

California Ralph M. Brown Act ........................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 5

First Amendment .........................................................................................*passim*

HBMC § 2.97.010 ................................................................................................. 3

HBMC § 2.97.010, *et seq.* .................................................................................... 3

HBMC § 2.97.020 ..................................................................................... 1, 2, 3, 9

HBMC § 2.97.030 ............................................................................................. 3, 9

HBMC § 2.97.070 ................................................................................................. 3

Huntington Beach Municipal Code ("HBMC") ................................................... 2

Huntington Beach Municipal Code Chapter 2.97 ................................................ 3

U.S. Constitution, amendment I ....................................................................... 5, 6

Burke, Williams & Sorensen, LLP
Attorneys At Law
Santa Ana

IRV #4833-0711-1668 v1 — - iii - — DEFENDANT CITY OF HUNTINGTON BEACH'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Shayna Lathus ("Plaintiff") alleges that her First Amendment rights were violated when she was removed from her appointment on the "Citizen Participation Advisory Board" (the "Advisory Board" or "Board") of the City of Huntington Beach ("City")—an unpaid political body whose members are appointed by members of the City Council. Compl. ¶¶ 11-19; Huntington Beach Municipal Code ("HBMC") § 2.97.020 (City's Request for Judicial Notice in Support of Motion to Dismiss ("City RJN"), Exh. 1). According to the Complaint, Plaintiff was removed from this political position by the very City Councilmember who appointed her to it in retaliation for (a) attending a rally at which Antifa members were believed to be present, and then (b) failing to adequately denounce Antifa as requested by that Councilmember. Compl. ¶¶ 11-19.

Under binding Ninth Circuit law, Plaintiff cannot state a claim for violation of her First Amendment rights for her removal from this purely advisory, political post. The Ninth Circuit has observed that "more is fair in electoral politics than in other contexts," and that "the First Amendment does not succor casualties of the regular functioning of the political process." *Blair v. Bethel School Dist.*, 608 F.3d 540, 544, 545 (9th Cir. 2010). Based on that reality, the Ninth Circuit has rejected claims very similar to that raised by Plaintiff here, including but not limited to (1) a school board member's claim that his First Amendment rights were violated when he was stripped of his position as board vice president in retaliation for publicly criticizing the school superintendent (*Blair*, 608 F.3d at 543), and (2) a prospective municipal court judge's claim that his First Amendment rights were violated when his appointment to the judgeship was revoked in retaliation for his petitioning activities (*Chinn v. City of Spokane*, 429 Fed.Appx. 673 (9th Cir. 2011)).

In *Blair*, the Ninth Circuit summarized the plaintiff school board member's plight as follows: "Through the ordinary functioning of the democratic process, he

1   was removed from a titular position on a school board by the very people who
2   elected him to the position in the first place." *Blair*, 608 F.3d at 544. Similarly, the
3   Court observed in *Chinn* that the prospective judge "had his appointment revoked
4   through the ordinary functioning of the judicial-confirmation process." *Chinn*, 429
5   Fed.Appx. at 675. According to the Ninth Circuit, "we *expect* political officials to
6   cast votes in internal elections in a manner that is, technically speaking, retaliatory,
7   *i.e.,* to vote against candidates whose views differ from their own." *Blair*, 608 F.3d
8   at 544. In fact, the Ninth Circuit has recognized that such votes and similar
9   actions—here, the act of the City Councilmember in removing Plaintiff after she
10  ceased to reflect her views—**are protected by the First Amendment themselves**. *Id.*
11  at 545; *Chinn*, 429 Fed.Appx. at 675

   Plaintiff's case falls squarely within this precedent. Plaintiff lived by the political sword, and she died by the political sword. She alleges that she accepted the appointment to the Advisory Board "because it presented her with an opportunity to . . . gain experience and name recognition locally as a springboard to further a career in politics. . . ." Compl. ¶ 11. In other words, she saw it as a political steppingstone. Commensurate with that purpose, she was appointed to the position by a then-allied member of the City Council, per the Huntington Beach Municipal Code ("HBMC"), then later removed by that same Councilmember when her actions ceased to reflect the Councilmember's views, in furtherance of the Councilmember's own First Amendment rights. Compl. ¶¶ 11-19; HBMC § 2.97.020 (City RJN), Exh. 1.

   These events are nothing more than the ordinary functioning of the political process. As such, they do not give rise a claim for a violation of Plaintiff's First Amendment rights, and Plaintiff's case should therefore be dismissed in its entirety.

26  \ \ \
27  \ \ \
28  \ \ \

## II. STATEMENT OF FACTS

In or about late 2018 or early 2019, Plaintiff was appointed by Kim Carr[1], a City Councilmember of the City of Huntington Beach, to a position on the City's "Citizen Participation Advisory Board." Compl. ¶ 11. Plaintiff accepted the appointment "because it presented her with an opportunity to help her fellow Huntington Beach residents, participate in local government, ***and gain experience and name recognition locally as a springboard to further a career in politics and within Huntington Beach*** so that she could continue to serve her community." *Id.* (emphasis added).

The Advisory Board was created and is governed by Chapter 2.97 of the Huntington Beach Municipal Code ("HBMC"). HBMC § 2.97.010, *et seq.* (City RJN, Exh. 1). The Boad consists of seven members, each of whom is appointed by a member of the City Council. HBMC §§ 2.97.010, 2.97.020 (City RJN, Exh. 1). The purpose of the Board is to provide recommendations to the City Council on the use of Community Development Block Grant funds for lower-income housing and related projects. HBMC § 2.97.030 (City RJN, Exh. 1). The Municipal Code permits the Board to "hold public hearings to obtain citizen input on community needs, plans or proposals," and requires the Board to "provide specific recommendations regarding the projects reviewed by the board to the City Council." *Id.* Meetings of the Advisory Board are to be held in accordance with the California Ralph M. Brown Act, Cal. Gov. Code sections 54950 *et seq.* HBMC § 2.97.070 (City RJN, Exh. 1).

In April of 2019, Plaintiff attended a rally in the City regarding immigration issues. Compl. ¶ 13. After the rally, Councilmember Carr allegedly informed Plaintiff that she had seen a photograph of her at the rally, "standing near individuals dressed in black that Carr identified as 'Antifa' members." Compl. ¶ 14.

---

[1] Although the Complaint sometimes refers to Ms. Carr as "Defendant Carr," she was not actually named as a defendant in the pleading.

Ms. Carr then allegedly instructed Plaintiff "to write a public statement on social media denouncing Antifa." *Id.*

Plaintiff alleges that she "reasonably understood from Carr that [Plaintiff's] position on the [Advisory Board] depended on making a statement." Compl. ¶ 15. Based on that understanding, Plaintiff "posted a statement on social media" stating "that she supports law enforcement officers, she also supports immigrants' rights, she was not aware that people identifying as Antifa would be present at the rally, and she did not engage with people identified as Antifa." *Id.*

Thereafter, Ms. Carr allegedly told Plaintiff that her statement was "not enough" because it did not "denounce" Antifa, and asked Plaintiff to resign from the Advisory Board. Compl. ¶ 16. In response, Plaintiff "wanted to speak with her advisors and get more clarification from Carr on exactly what Carr required [Plaintiff] to say." Compl. ¶ 17. Before she could do so, however, Plaintiff "discovered through a social media post that Carr had 'removed' [Plaintiff] from the [Advisory Board], which in parlance is known as being fired by tweet." *Id.*

Ms. Carr then allegedly made a social media post stating that "[t]hose that do not immediately denounce hateful, violent groups do not share my values and will not be a part of my team." Compl. ¶ 18.

Plaintiff alleges that, "[b]y forcing [her] to make a public statement about her attendance at the [rally] under threat of losing her position on the [Advisory Board], Defendant violated [Plaintiff's] right to be free from government compelled speech." Compl. ¶ 18. She further alleges that, [b]y firing [Plaintiff] from her position on the [Advisory] Board for attending the rally, for not denouncing Antifa, and for associating with people Carr identified as 'Antifa,' Defendant violated Plaintiff's free speech, association, and assembly rights and retaliated against her for exercising those First Amendment rights." *Id.*

\ \ \

\ \ \

### III. STANDARD OF REVIEW

A suit must be dismissed if the plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard requires "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 568). "At this stage, the Court 'must accept as true all of the allegations contained in a complaint.'" *Id.* However, it need not "accept as true a legal conclusion couched as a factual allegation." *Id.*

### IV. ARGUMENT

#### A. Each of Plaintiff's Claims is Premised on Actual or Threatened Retaliation, in the Form of Removal from the Advisory Board, for Engaging or Failing to Engage in Certain Speech

The Complaint alleges two claims for relief, each of which is brought under 42 U.S.C. section 1983. The First Claim for Relief is entitled "Government Compelled Speech under U.S. Constitution, amendment I," and is based on the allegation that "Carr intentionally coerced Plaintiff to make a public statement regarding Plaintiff's attendance at the [rally] as a condition of Plaintiff retaining her status as a member of the Advisory Board." Compl. ¶ 24.[2] The Second Claim for

---

[2] This statement is contrary to the allegations in the body of the Complaint, which does ***not*** allege that Plaintiff actually issued the speech requested—*i.e.*, the denouncement of Antifa. Compl., ¶¶14-15. In fact, the Complaint alleges that the primary reason Plaintiff was removed from the Advisory Board was because she ***failed*** to issue the denouncement of Antifa that Ms. Carr allegedly requested, and instead issued a soft statement that she did not know Antifa would be present and did not interact with them. *Id.* at ¶¶ 16-18

Relief is entitled "Retaliation for Protected Speech, Association, and Assembly under U.S. Constitution, amendment I," and is based on the allegation that "Defendant terminated Plaintiff's employment as member of the [Advisory Board] in retaliation for Plaintiff's attendance at the [rally] and the appearance of her association with people identified as 'Antifa' that rally." Compl. ¶ 31.

The crux of both Plaintiff's claims for relief, then, is that the loss (or threat of loss) of Plaintiff's position on the Advisory Board, in retaliation for engaging (or failing to engage) in certain speech, violated Plaintiff's rights under the First Amendment.

### B. Plaintiff Cannot State a First Amendment Claim Based on Her Actual or Threatened Removal from the Political "Advisory Board" By the Very Politician Who Put Her There

To state a claim for First Amendment retaliation by the government, a plaintiff must prove that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to *adverse action* by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair*, 608 F.3d at 543 (emphasis added); *see also Chinn*, 429 Fed.Appx. at 674; *Soranno's Gasco, Inc. v. Morgan* (9th Cir. 1989) 874 F.2d 1310, 1314; *Thomas v. Independence Twp*. (3d Cir. 2006) 463 F.3d 285, 296

In this context, not just any alleged "adverse action" will qualify. According to the Ninth Circuit, "[t]he most familiar adverse actions are 'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." *Blair*, 608 F.3d at 543 (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). Thus, "[t]he prototypical plaintiff in these cases is a government worker *who loses his job* as a result of some public communication critical of the government entity for whom he works" (Blair, 608 F.3d at 543 (citing *Pickering v. Bd. of Educ. of Township High Sch. Dist.*, 391

U.S. 563, 564 (1968)), "or a regulated entity that is stripped of its business license after engaging in speech that displeases the regulator" (*Blair*, 608 F.3d at 543 (citing *CarePartners, LLC v. Lashway*, 545 F.3d 867, 871 (9th Cir. 2008)), "or a prisoner who is retaliated against by prison officials for filing grievances or initiating actions in court" (*Blair*, 608 F.3d at 543 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1286 (9th Cir.2003)), or citizens who are allegedly targeted by law enforcement because of their political speech activities (*Blair*, 608 F.3d at 543 (citing *Mendocino Envtl. Ctr.v. Mendocino County* (9th Cir. 1999), 192 F.3d 1283).

In *Blair v. Bethel School District*, the Ninth Circuit concluded that a school board member who was ***removed from the position of vice president of the board*** could ***not*** prevail on a First Amendment retaliation claim. The plaintiff had alleged that the board stripped him of his leadership position because of repeated public criticism of the district superintendent. *Blair*, 608 F.3d at 543. The plaintiff further alleged that his comments constituted "political speech that exposed corruption, mismanagement and waste within the Bethel School District." *Id*. at 545, fn. 3. Despite this factual background, the Ninth Circuit held that there was no liability under the First Amendment.

The Court noted that the plaintiff's claim had "little in common" with typical First Amendment retaliation claims. Rather, "[t]hrough the ordinary functioning of the democratic process, he was removed from a titular position on a school board ***by the very people who elected him to the position in the first place***." *Id*. at 544 (emphasis added). The Court noted that "more is fair in electoral politics than in other contexts," and that "the First Amendment does not succor casualties of the regular functioning of the political process." *Id*. at 544, 545. In fact, the Court stated that it "*expect[s]* political officials to cast votes in internal elections in a manner that is, technically speaking, retaliatory, *i.e.,* to vote against candidates whose views differ from their own." *Id*. at 544. Thus, the Court could not conceive any "difference between what the Board's internal vote against [the plaintiff]

accomplished and what voters in a general public election might do . . .," and it saw "no reason the Board members' votes here should be regulated in a way that the general public's are not." *Id.* at 545.

The Court also observed that the other board members had a First Amendment right themselves to distance themselves from the plaintiff's criticism of the superintendent via their votes. The Court stated: "[W]hile [the plaintiff] certainly had a First Amendment right to criticize [the superintendent] and vote against his retention as superintendent, ***his fellow Board members had the corresponding right to replace [the plaintiff] with someone who, in their view, represented the majority view of the Board***." *Id*. at 545-546.

In *Chinn*, the Ninth Circuit followed the reasoning of *Blair* to hold that a prospective municipal court judge did not state a claim under the First Amendment where the city council in charge of appointing him to the position "revoked" that appointment in retaliation for the prospective judge filing a land-use petition protesting a proposed zoning change. *Chinn*, 429 Fed.Appx. at 674-675. As in *Blair*, the Court distinguished the prototypical retaliation plaintiff, stating that the plaintiff in *Chinn*, "by contrast, had his appointment revoked through the ordinary functioning of the judicial-confirmation process." *Id.* at 675. Moreover, again echoing *Blair*, the Court noted that Mr. Chinn "'isn't the only party in this case whose interests implicate First Amendment concerns,'" and that, "[w]hile Chinn undoubtedly had a First Amendment right to file a land use petition protesting a proposed zoning change, ***the city council members had the corresponding right to confirm a nominee they viewed as most fit for the municipal court judgeship, and Mayor Verner had the right to choose a municipal court nominee who the city council would confirm***." *Id.* (emphasis added).

The present case is governed by the holdings in *Blair* and *Chinn*. As in those cases, Plaintiff held a purely political, unpaid position on the Advisory Board, as a result of a political appointment by an allied City Councilmember, Ms. Carr.

Underscoring the body's political nature, under the City's Municipal Code, each member of the City Council gets to appoint one member of the Advisory Board as his or her proxy, to make recommendations to the Council regarding the use of funds on low-income housing and related projects. HBMC §§ 2.97.020, 2.97.030 (City RJN, Exh. 1). Indeed, Plaintiff herself has acknowledged and alleged that she accepted the appointment "because it presented her with an opportunity to . . . ***gain experience and name recognition locally as a springboard to further a career in politics***. . . ." Compl. ¶ 11 (emphasis added). In other words, this was a political move by Plaintiff for later political payoff.

As is often the case in politics, the winds shifted when Plaintiff found herself on the wrong side of an issue from the City Councilmember who appointed her—namely, her perceived affiliation with, and refusal to denounce, Antifa. Compl. ¶¶ 13-19. As a result, "through the ordinary functioning of the democratic process," Plaintiff was removed from an advisory position "by the very [person] who elected to put [her] to the position in the first place." *Blair*, 608 F.3d at 544. In fact, in deciding to remove Plaintiff from the position, ***Ms. Carr was exercising her own First Amendment rights***, as the Court's found in both *Blair* and *Chinn*, by distancing herself from someone who was perceived to not represent her values. *Id.* at 545; *Chinn*, 429 Fed.Appx. at 675. Indeed, according to the Complaint itself, ***Ms. Carr made no secret of her reasons for the removal***, expressly stating in a "social media post" that Plaintiff was removed because "[t]hose that do not immediately denounce hateful, violent groups do not share my values and will not be a part of my team." Compl. ¶ 18.

As observed by the Ninth Circuit in *Blair* and *Chinn*, "the First Amendment does not succor casualties of the regular functioning of the political process," which was all that was at issue here. *Blair*, 608 F.3d at 545; *Chinn*, 429 Fed.Appx. at 675. On the contrary, the law "*expect[s]* political officials to cast votes in internal elections in a manner that is, technically speaking, retaliatory, *i.e.,* to vote against

candidates whose views differ from their own." *Blair*, 608 F.3d at 544; *Chinn*, 429 Fed.Appx. at 675. Here, Plaintiff was a "victim" of no more than this normal political jockeying—a consequence she knew could befall her by entering the political arena to further her career.

Because Ninth Circuit jurisprudence does not recognize claims for First Amendment violations in this context, each of Plaintiff's two claims for relief should be dismissed in their entirety. Moreover, because Plaintiff would be unable to cure this defect in an amended pleading, leave to amend should not be granted.[3]

## V. CONCLUSION

For the reasons set forth herein, the City respectfully requests that this Court dismiss the First and Second Claims for Relief in the Complaint, without leave to amend.

Dated: July 30, 2021

BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Mark J. Austin
Mark J. Austin
Stephen A. McEwen
Attorneys for Defendant
CITY OF HUNTINGTON BEACH

---

[3] Plaintiff may assert that the alleged "compelled speech" aspect of this case distinguishes it from the cases relied upon by the City. However, whether the issue is speech that Plaintiff *did* engage in that Ms. Carr disagreed with, or speech that Plaintiff did *not* engage in that Ms. Carr asked her to, the gravamen of the claim is the same—that she is allegedly being retaliated against via her removal from the Advisory Board, which is the only "adverse action" alleged in the Complaint.
In any event, the Complaint does not actually allege a claim of "compelled speech," for it does not allege that Plaintiff actually issued the speech requested—*i.e.*, the denouncement of Antifa. Compl., ¶¶14-15. In fact, the Complaint alleges that the primary reason Plaintiff was removed from the Advisory Board was because she *failed* to issue the denouncement of Antifa that Ms. Carr allegedly requested. *Id.* at ¶¶ 16-18.

# PROOF OF SERVICE

I, Bernadette Antle, declare:

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1851 East First Street, Suite 1550, Santa Ana, California 92705-4067.

On July 30, 2021, I electronically filed the attached document:

**DEFENDANT CITY OF HUNTINGTON BEACH'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(B)(6**

with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

| | | |
|---|---|---|
| Attorneys for Plaintiff | Andrea Ruth Bird | abird@birdlg.com |
| Shayna Lathus | Jerold D. Friedman | jerry@lawofficejdf.com |
| | | |
| Attorneys for Defendant | Stephen A. McEwen | smcewen@bwslaw.com |
| City of Huntington Beach | Mark Jason Austin | maustin@bwslaw.com |

And I hereby do certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

*No Known Manual Recipients*

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 30, 2021, at Santa Ana, California.

*/s/ Bernadette C. Antle*
Bernadette Antle